◼ In the Matter of LEVAL CHAMBERS et al., Respondents, v THOMAS COUGHLIN, III, as Commissioner of the Department of Correctional Services, et al., Appellants.—Appeal from a judgment of the Supreme Court at Special Term, entered February 20, 1980 in Washington County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to direct respondents to afford petitioners visitation privileges enjoyed by the general population at the Great Meadow Correctional Facility. On May 31, 1979, respondent Superintendent of Great Meadow Correctional Facility advised the inmate population of the facility that a restricted visiting area had been constructed in the visiting room which would be a noncontact visiting area. This restricted visiting area consisted of small cubicles, the upper walls of which were constructed of plexiglass. The inmates were further advised that effective June 1, 1979, any inmate reported for possession of contraband from an outside source may be subjected to disciplinary action by having his visiting privileges limited to the restricted visiting area. Petitioners, all inmates at the Great Meadow Correctional Facility, were subsequently found, after superintendent proceedings, to have violated institutional rules by being in possession of contraband in the form of marihuana. As punishment for violating the institutional rules, each petitioner was placed under keep-lock or assigned to the special housing unit; incurred loss of good time varying from 60 to 90 days; loss of commissary privileges during the period that they were under keep-lock or in the special housing unit; and, in addition, were subjected to visits in the restricted visiting area with no contact visits for periods ranging from 180 days to 270 days. After exhausting the administrative remedies available to them, petitioners commenced this proceeding under CPLR article 78. Special Term, upon a finding that there was no evidence showing that the contraband found in petitioners' possession was the result of contact visitation, determined that the imposition of restricted visitation was an abuse of discretion and directed that petitioners be afforded forthwith the rights of contact visitation in common with the inmates in the general population. Subdivision 2 of section 18 of the Correction Law grants to the superintendent of a correctional facility broad supervisory and managerial authority, so long as such authority is exercised in accordance with the rules and

regulations promulgated by the Commissioner of Correction. The rules and regulations of the Commissioner of Correction are set forth in title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York published pursuant to sections 102 through 106 of the Executive Law. Section 301.1 of part 301 of title 7, entitled "Minimum Standards" provides: "The provisions of this Part shall apply as minimum requirements throughout the correctional facility and in all cells, cell blocks and housing units (including special and segregation housing units). No variation shall be permitted." Section 301.6 of part 301 provides as follows: "(a) No inmate shall be deprived of the correspondence or visiting privileges available to inmates in the general population. (b) Visits for persons in segregation units shall be in accordance with any special precautions deemed necessary or appropriate by the superintendent of the facility, but no employee shall be permitted to monitor the content of conversation between an inmate and his legal or spiritual advisor." It does not appear from the record, and is not contended by respondents, that petitioners are confined in a segregation unit. Section 301.8 of part 301, entitled "Prohibited Punishment", provides as follows: "No inmate is ever, under any circumstances, to be deprived of any item or activity required by the provisions of this Part for the purpose of punishment or discipline." It appearing that petitioners were not confined in a segregation unit as defined in 7 NYCRR 300.2 (c), respondents have failed to abide by 7 NYCRR 301.8 by restricting the visitation privileges of petitioners to visitation privileges less than those available to the inmates in the general population of the facility for the purpose of punishment or discipline. Respondents attempt to justify this punishment based on the commissioner's Directive No. 4403, which provides as follows: "Contact visiting privileges may be suspended by the superintendent for a specified period for documented cause." At the outset, it is unclear whether this directive applies to an entire facility, or to an individual inmate. If it were meant to be applied to an individual inmate, it is ineffective since it does not have the force of a regulation. No rule or regulation made by any State department, board, bureau, officer, authority or commission is effective until it is filed in the office of the Department of State (NY Const, art IV, § 8), and it is well settled "that an administrative agency is bound by its own regulations which have the full force and effect of law". *(Matter of Severino v Ingraham,* 59 AD2d 587, revd on other grounds 44 NY2d 763.) Assuming that this directive had the force of a regulation, then any documented cause would have to relate to the visiting privileges sought to be suspended. The record does not document that the contraband was obtained through contact visitation. In fact, it is practically impossible to smuggle contraband into the facility through contact visitation, since all inmates are strip searched immediately after contact visits. The disciplinary action taken against petitioners to the extent that it limited their visitation privileges to the restricted visitation area was, therefore, arbitrary, capricious and illegal, in that it deprived petitioners of the visiting rights which the general inmate population of the facility enjoyed (cf. *Cooper v Morin,* 49 NY2d 69). Judgment affirmed, without costs. Sweeney, J. P., Staley, Jr., Main, Mikoll and Herlihy, JJ., concur.