OPINION OF THE COURT
Robert E. Fischer, J.
As refined by the parties, we perceive the sole issue in this article 78 proceeding to be whether respondents had discretion to terminate for six months petitioner Robert Bugliaro’s visiting privileges — in addition to other punishments — on his plea of guilty at a superintendent’s proceeding for, inter alia, possession of contraband (marihuana) discovered on petitioner’s body following his participation in the Heritage Day feast where visitors to the facility were present. Since there is automatic review of the superintendent’s proceeding for loss of privileges (7 NYCRR 270.2), we deem all administrative remedies to have been exhausted. Petitioner having been returned to general population prior to the initiation of this proceeding after 30 days’ confinement in the special housing unit, we address this issue in relation to petitioner’s present status in general population.
*426 Initially we observe that the only statute of which we are aware concerning visitors at a correctional facility authorizes named public officials and clergymen unlimited access. As to other visitors, it provides: “No other person not otherwise authorized by law shall be permitted tó enter a correctional facility except by authority of the commissioner of corrections under such regulations as the commissioner shall prescribe.” (Correction Law, § 146; emphasis supplied.)
Before such regulations become effective, the New York State Constitution requires that they be filed in the office of the Department of State (art IV, § 8). In turn, the Executive Law (§§ 102-106) requires the Secretary of State to compile and publish all such regulations (except those relating to internal management not applicable here) in the “ ‘official compilation of codes, rules and regulations of the state of New York.’ ” (Executive Law, § 102, subd 4.) This compilation “presumptively establishes]” the validity of such regulations (§ 102), affording them the full “force and effect of law” (Matter of Severino v Ingraham, 59 AD2d 587, revd on other grounds 44 NY2d 763) and permitting them to be read into evidence (§ 106).
To support the revocation of visitation, the Attorney-General relies upon “Directive #4403” (eff June 18, 1979), and advises that this directive affords respondents authority to suspend “visitation privileges for a specific period of time”. Accepting the Attorney-General’s description and characterization of that document (which has not been submitted here), our review of the Secretary of State’s official compilation of regulations fails to disclose the “Directive”. Since we view section 146 of the Correction Law as requiring visitation privileges to be governed solely by regulations, we do not deem that directive — which has not met the constitutional and statutory requirements of a regulation — to be controlling, and therefore look to regulation in the official compilation for a resolution of this issue (cf. Matter of Chambers v Coughlin, 76 AD2d 980, 981, where the court assumed the validity of the noted directive, and concluded that the disciplinary measures were in conflict).
*427 Search of title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York — the regulations of the Department of Correctional Services — fails to disclose any regulation which directly treats of deprivation of visitation affecting inmates in general population. Rather, the sole regulations addressing this issue[1] appear in 7 NYCRR Part 300 entitled: “Special Housing Units”.[2]
“301.6 Correspondence and Visiting.
“(a) No inmate shall be deprived of the correspondence or visiting privileges available to inmates in the general population.
“(b) Visits for persons in segregation units shall be in accordance with any special precautions deemed necessary or appropriate by the superintendent of the facility, but no employee shall be permitted to monitor the content of conversation between an inmate and his legal or spiritual advisor * * *
“301.8 Prohibited punishment.
“No inmate is ever, under any circumstances, to be deprived of any item or activity required by the provisions of this Part for the purpose of punishment or discipline.”
Absent regulations dealing with the denial of visiting privileges for those in general population, it appears that, unless “the safety or security of the facility *** is in jeopardy” requiring confinement in their cells of “all inmates or any segment of the inmates” (7 NYCRR 251.6 [f|), total visiting privileges cannot be extinguished or curtailed for inmates in general population.
The standards established by the State Commission of Correction for local correctional institutions[3] (9 NYCRR *428 Part 7008) provides support for such conclusion. Those regulations providing for “availability of visits” (9 NYCRR 7008.3) and arrangements for visitors (9 NYCRR 7008.4-7008.7) permit total deprivation of a “prisoner’s visitation rights” only in an “emergency situation” (9 NYCRR 7008.8 [d]). If there is a particular problem with a particular visitor, the regulations provide: “The visitation rights of a prisoner with a particular visitor may be denied, revoked or limited only when it is determined that the exercise of those rights constitutes a threat to the safety, security or good order of a facility.” (9 NYCRR 7008.8 [b].)
Further, while the regulations for local facilities speak of “visitation rights”, and those for State facilities use the term “visiting privileges”, our highest court has recently recognized that visitation is a right afforded by our State Constitution, even to a right of “contact” visitation for pretrial detainees (Cooper v Morin, 49 NY2d 69). In any event, whether it be right or privilege, inmates cannot be deprived of visitation absent compliance by correctional officials with a published regulation.
We conclude, therefore, that respondent was precluded from disciplining petitioner by denying him all right of visitation while he was in general population; that absent discretion reposed in respondent to do so, his denial of such visitation is in excess of his jurisdiction and an error of law (CPLR 7803, subds 2, 3); that as a result thereof, that portion of the discipline imposed must be vacated and petitioner’s visitation privileges restored (CPLR 7806).
Under the facts of this case, we do not — as petitioner has urged — posit our conclusion on constitutional principles. Rather, we base our conclusion on the failure of the Commission of Correction and/or the Department of Corrections to promulgate specific and definite regulations dealing with the denial of visitation for those in general population in State correctional facilities.

. Nonapplicable regulations affecting all visitors are in various provisions of 7 NYCRR Parts 51-53 inclusive.

. Although the Attorney-General invites our attention to 7 NYCRR 253.5 (a) (2) as affecting visitation rights, examination of that regulation shows it speaks only in general terms of loss of “specified privileges” without further description.

. Although the State commission was charged with the duty of establishing minimum standards for State and local correctional facilities no later than January 1,1976 (Correction Law, § 45, subd 6), the published regulations disclose compliance only as to local facilities.