Anatol KOZLOWSKI, et al., Plaintiffs,

v.

Thomas COUGHLIN III, et al., Defendants.

James SIMS, et al.,

v.

Thomas COUGHLIN III, et al., Defendants.

Nos. 81 Civ. 5886(CES), 81 Civ. 2355(CES).

United States District Court, S. D. New York.

March 22, 1982.

David L. Posner, McCabe & Mack, Robert Gombiner, Prisoners' Legal Services of N. Y., Poughkeepsie, N. Y., for plaintiffs.

Richard Howard, Asst. Atty. Gen., New York State Dept. of Law, New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

These cases challenge the constitutionality of Directive 4403 of the New York State Department of Correctional Services pertaining to the inmate visitation program at

state correctional facilities. The plaintiffs, who seek certification to bring this action on behalf of all present and future inmates and visitors of inmates, contend that Directive 4403[1] violates rights guaranteed by the First, Fifth and Fourteenth Amendments by permitting the suspension of visitation privileges without adequate procedural protections. Plaintiffs in both cases contend that their visiting privileges at various state correctional facilities were wrongfully suspended following false allegations of misbehavior during otherwise authorized visits.[2] Since the commencement of these cases in April and September of last year, a number of motions have been filed, directed to both procedural and substantive matters. In *Sims*, the defendants move to dismiss or transfer the matter, and for judgment on the pleadings; the plaintiffs move for summary judgment. In *Kozlowski*, the defendants move for summary judgment; the plaintiffs move for consolidation with *Sims*, class certification, and summary judgment. Also pending in *Kozlowski* is a motion for preliminary relief pursuant to Fed.R.Civ.P. 65 on behalf of intervening plaintiffs, James and Lisabeth Purchell.

### 1. Procedural Motions

■■■ As these cases involve a common issue of law—namely, the constitutionality of Directive 4403—and similar questions of fact, we grant the Kozlowski plaintiffs' motion for consolidation at the outset.[3] We further find certification of classes of all present inmates and their visitors under Fed.R.Civ.P. 23(b)(2) appropriate in this case.[4] Plaintiffs meet the prerequisites to a class action set out in Fed.R.Civ.P. 23(a).[5]

1. Directive 4403 "describes the policies and guidelines for the operation of the Inmate Visitor Program." With respect to the revocation of visitation privileges, Directive 4403 provides as follows:

 The Superintendent may deny [sic] limit, or revoke the visitation privelege [sic] of any inmate or visitor if the Superintendent has reasonable cause to believe that such action is necessary to maintain the safety, security and good order of the facility.
 . . . .
 Socially acceptable physical contact shall be permitted between an inmate and a visitor. Unacceptable behavior may result in the visit being terminated.
 Contact visitation priveleges [sic] may be suspended by the Superintendent for a specified period for documented cause.

2. The *Sims* case contests the suspension of the visiting privileges of Forrest Warren upon charges that he had introduced alcohol into Greenhaven Correctional Facility while visiting inmate Charles Sims. The *Kozlowski* case concerns the suspension of the visiting rights of Donna Kozlowski, wife of inmate Anatol Kozlowski, for sexual improprieties allegedly committed during a visit with her husband at Fishkill Correctional Facility. James and Lisabeth Purchell, intervenors in the Kozlowski action, present claims concerning the exclusion of Ms. Purchell from Clinton Correctional Facility following a charge that she smuggled marijuana during a visit with her husband. In all cases, plaintiffs deny having committed the acts alleged as the basis for the suspensions. As is discussed in n.3, *infra*, it appears that Charles Sims has been released on parole since the filing of this action. By order at a hearing held December 23, 1981, Donna Kozlowski has been permitted to resume visits with her husband. Ms. Purchell, however, continues to be barred from Clinton and thus from visits with her husband.

3. We are aware of the mootness question raised by the apparent release of Mr. Sims on parole. We note, however, that this matter has never been made the basis of a motion by the defendants, and that the plaintiffs contest the legal significance of the fact. *See* Plaintiffs' Brief in Support of Summary Judgment, Class Certification and Consolidation at 6. Under these circumstances, and especially in light of our granting of plaintiffs' motion for class certification in *Kozlowski, see supra* at 854, we believe that consolidation is appropriate and will serve to expedite resolution of the substantive issues in this case.

 This granting of the motion to consolidate moots defendants' motion of May 1981 to transfer the *Sims* action to the United States District Court for the Western District of New York, and that motion is hereby denied.

4. We decline to include future inmates and future visitors in these classes as such may raise res judicata problems at a later date, and any affirmative relief granted can be made permanent if necessary. *See* 3B Moore; Federal Practice ¶ 23.40[3] at 23–301 (2d ed. 1981).

5. Plaintiffs aver that the prison population of New York State at any time totals approximately 25,000. Affidavit of David L. Posner at ¶ 5. Assuming the visitor class would be of at

Since they challenge actions taken pursuant to a statewide directive, moreover, certification as (b)(2) classes is appropriate. By enforcing the directive, the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ...". Fed.R.Civ.P. 23(b)(2). While defendants contend that class certification is unnecessary because a judgment in favor of the individual plaintiffs would run to the benefit of those similarly situated to plaintiffs, we find certification in this case "advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole". *Mendoza v. Lavine,* 72 F.R.D. 520, 523 (S.D.N.Y.1976). *See also Bacon v. Toia,* 437 F.Supp. 1371, 1383 (S.D.N.Y.1977), *aff'd,* 580 F.2d 1044 (2d Cir. 1978).

### 2. Substantive motions

Having consolidated the two actions and granted class certification, we construe the several pending motions to dismiss and for summary judgment as a single set of cross-motions for summary judgment directed to the now consolidated case. After considering the papers submitted by the parties in connection with all the motions previously filed, we grant summary judgment for the plaintiffs on the issue of the constitutionality of Directive 4403.

Plaintiffs advance two theories in support of their position that their visitation privileges [6] may not be revoked without due process protection. First, they argue that prison visits are a liberty interest created by the substantive laws of New York and subject to the protections of the Due Process Clause of the Fourteenth Amendment. Second, they argue that prison visits are a fundamental right under the First Amendment, again requiring due process protections. As we find the first argument meritorious, and sufficient for the purposes of the motions in this case, we do not consider the second issue of the "fundamentality" of prison visitation under the Constitution of the United States.

Plaintiffs' "liberty interest" argument requires a two-part inquiry into whether the interest they claim is indeed a protected interest, and if so, whether current procedures provide what process is due. *See Logan v. Zimmerman Brush Co.,* —— U.S. ——, ——, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). Constitutionally protected liberty interests can be found in both the federal constitution and the substantive law of the states. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (White J., concurring). On the state level, such interests may be created by statute, regulation, or judicial decree. *Pugliese v. Nelson,* 617 F.2d 916, 922 (2d Cir. 1980). To be a constitutionally protected interest, however, the benefit must be presently enjoyed by the individual claiming entitlement, or enjoyable upon the happening of specified conditions. *Id.* Mere hope on the part of an inmate that some benefit will be granted is not sufficient, nor is a mere statistical probability. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. at 465, 101 S.Ct. at 2464. Thus, when a state

least equal magnitude, both proposed classes meet the numerosity requirement of Fed.R.Civ. Pro. 23(a)(1). Both proposed classes share a common question of law, namely, the constitutionality of Directive 4403. The Purchells' claims are typical of the claims of the classes: Ms. Purchell was excluded from Clinton Correctional Facility without notice or hearing pursuant to Directive 4403; Ms. Purchell denies having committed the act that led to her exclusion; both Mr. and Ms. Purchell claim that this exclusion violated their rights to association under the First Amendment and rights to due process under the Fifth and Fourteenth Amendments. There is nothing in the record that

suggests that the Purchells would not fairly and adequately protect the interests of the classes they seek to represent. The prisoner class is represented by Prisoners' Legal Services of New York, Inc. This provides further assurance that representation will be fair and adequate. *See Gerstein v. Pugh,* 420 U.S. 103, 110–111 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975).

**6.** In this Decision, we refer to visitation as either a "right" or a "privilege", recognizing that the difference in the two terms is no longer legally significant in this context. *See Pugliese v. Nelson,* 617 F.2d 916, 922 (2d Cir. 1980).

grants good time credits to prisoners revocable only upon serious misconduct, it has created a liberty interest to which due process applies. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). A similar liberty interest arises when a state provides that its Board of Parole "shall order" parole for an eligible prisoner unless one of four specific situations occur. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). In contrast, however, when a state grants its Board of Pardons "unfettered discretion" to commute the sentences of lifetime inmates, no entitlement to such commutation arises, even though the Board may in fact commute the sentences of at least 75% of the "lifers" whose cases it hears. *Connecticut Board of Pardons v. Dumschat*, 452 U.S. at 461, 464, 101 S.Ct. at 2462, 2464.

The State of New York, by judicial decision, administrative regulation and departmental directive has granted its prisoners a protected liberty interest in receiving visits from persons of their choice. The New York Court of Appeals has recognized as a matter of state law that those within the custody of the state have a fundamental right to the maintenance of relationships with family and friends. *Cooper v. Morin*, 49 N.Y.2d 69, 80, 399 N.E.2d 1188, 1194, 424 N.Y.S.2d 168, 176 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980). While the facts of *Cooper* specifically involved the rights of pretrial detainees to a system of contact visitation, the authorities cited by the court, as well as its analysis, suggest that the basic right identified there extends to convicted individuals as well.[7] Several lower New York courts have recognized *Cooper*'s implications in this regard. *See McNulty v. Chinlund*, 108 Misc.2d 707, 708, 438 N.Y.S.2d 734, 736 (Sup. Ct.1981) (no rational basis for denying contact visitation privileges mandated in *Cooper* to sentenced prisoners); *Bugliaro v. Wilmot*, 108 Misc.2d 425, 428, 437 N.Y.S.2d 551, 553 (Sup.Ct.1981) (*Cooper* recognizes a state constitutional right to prison visitation). While these judicial decisions might well be sufficient to conclude that New York prisoners have a protected interest in receiving visits from persons of their choice, we do not rest our decision on these cases alone. Rather, we find that New York's administrative regulations also evince the liberty interest that plaintiffs claim in this case.

Pursuant to N.Y.Correc.Law §§ 112 and 146, the New York Commissioner of Corrections has promulgated regulations that establish "minimum requirements" for correctional facilities throughout the state. 7 N.Y.C.R.R. §§ 300.1(a) (1980), 301.1 (1975). It is thus a "minimum requirement" in New York that "no inmate shall be deprived of the ... visiting privileges available to inmates in the general population". 7 N.Y.C.R.R. § 301.6(a) (1975). It is a further minimum require-

---

7. The New York Court of Appeals in *Cooper* used a balancing approach to determine whether the state constitution required that pretrial detainees be afforded a system of contact visitation. 49 N.Y.2d at 79, 399 N.E.2d at 1194, 424 N.Y.S.2d at 175. Thus, while *Cooper* noted differences between convicted individuals and pretrial detainees, this was only in the context of "the State's side of the question". 49 N.Y.2d at 81, 399 N.E.2d at 1195, 424 N.Y.S.2d at 176. The factors identified by the court as being "on the detainees side of the balance"—namely, fundamental rights to marriage, family life and child rearing—can be seen to be shared by convicted individuals and pretrial detainees alike. Indeed, the authorities cited as establishing the detainees' fundamental rights to marriage and family life are not specific to detainees at all. *See People ex rel. Portnoy v.*

*Strasser*, 303 N.Y. 539, 542, 104 N.E.2d 895, 896 (1952) (child custody may not be denied on basis of mother's outside employment and failure to provide religious training for child); *Fearon v. Treanor*, 272 N.Y. 268, 272–273, 5 N.E.2d 815, 816–817 (1936), *appeal dismissed*, 301 U.S. 667, 57 S.Ct. 933, 81 L.Ed. 1332 (1937) (act abolishing civil actions for alienation of affections, criminal conversion, seduction and breach of promise to marry is constitutional). Many of the "numerous books and articles" cited in support of the pretrial detainees' right, moreover, specifically concern the experience of convicted persons. *See, e.g.*, Note, On Prisoners and Parenting: Preserving the Tie That Binds, 87 Yale L.J. 1408 (1978); Zemans and Cavan, Marital Relationships of Prisoners, 49 J. of Crim.L., Criminology and Police Sci. (1958).

ment that "no inmate is ever, under any circumstances, to be deprived of [these visiting privileges] for the purpose of punishment or discipline". 7 N.Y.C.R.R. § 301.8 (1975). These regulations, which have the "force and effect of law" in New York, *see Bugliaro v. Wilmot*, 108 Misc.2d at 426, 437 N.Y.S.2d at 552, have been broadly construed by New York courts. Sections 301.6 and 301.8 have thus been held to *prohibit* the suspension of visitation privileges to inmates for disciplinary purposes, Directive 4403 notwithstanding. *Id.*;[8] *see also Chambers v. Coughlin*, 76 App.Div.2d 980, 429 N.Y.S.2d 74 (1980). Nor is Directive 4403 itself inconsistent with the conclusion that visitation is a state created liberty interest in New York. Directive 4403 provides that visitation privileges may only be revoked upon a finding that such action is necessary to "maintain the safety, security, and good order of the facility". The structure of the Directive is thus quite similar to the statute considered in *Wolff v. McDonnell*: it grants a benefit that may only be revoked for substantial cause. *See* 418 U.S. at 557, 94 S.Ct. at 2975. The interests created by both the regulations and the Directive are more than mere hopes or statistical probabilities. They are presently enforceable entitlements granted by the state. On the basis of sections 301.6 and 301.8, as well as Directive 4403 and the fundamental rights identified in *Cooper* therefore, we conclude that New York prisoners enjoy a constitutionally protected liberty interest in receiving visitors of their choice.

Having determined that visitation privileges are a liberty interest deserving of due process protection, we next consider whether Directive 4403 affords constitutionally sufficient process to the plaintiffs in this case. We find it does not.

 The Due Process clause grants an aggrieved party the opportunity to present his or her case, and have its merits fairly judged. *Logan v. Zimmerman Brush Co.*, —— U.S. at ——, 102 S.Ct. at 1156. While the concept of due process is necessarily a flexible one, and highly fact specific, *see Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), its essence is the opportunity to be heard "at a meaningful time and in a meaningful manner". *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) While the record in this case is not adequate to determine precisely what process is due in the visitation revocation context,[9] it is sufficient to find that Directive 4403 is constitutionally deficient. Ms. Purchell denies any wrongdoing during her visit with her husband at Clinton Correctional Facility. Neither she nor her husband have been afforded an opportunity to rebut the charges against them. Their visiting privileges have been suspended for "at least" six months; officials at Clinton have not indicated by what criteria the decision as to restoration of privileges will be made at

---

**8.** The facts and holding of *Bugliaro* illustrate the broad scope of §§ 301.6(a) and 301.8. In *Bugliaro*, a prisoner contested a six month suspension of his visiting privileges imposed upon his plea of guilty to, *inter alia*, possessing marijuana obtained from visitors. 108 Misc.2d at 425, 437 N.Y.S.2d at 552. The superintendent of the correctional facility defended this suspension on the basis of Directive 4403, in particular, that section authorizing visitation suspensions "for a specified period". *Id.* The Supreme Court of Chemung County rejected this argument, holding that by virtue of 7 N.Y.C.R.R. §§ 301.6 and 301.8, "the respondent was precluded from disciplining petitioner by denying him all right of visitation while he was in

general population". 108 Misc.2d at 428, 437 N.Y.S.2d at 553.

**9.** *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903, suggests consideration of the following factors in determining what quantum of process is due in a particular case: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards; (3) the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

that time.[10] The defendants do not contest Ms. Purchell's averment that she was never allowed the opportunity to tell her side of the story. Rather, defendants only document the "reasonable cause" that led to the revocation of visitation privileges in the Purchells' case. Defendants argue in several of their papers that since Directive 4403 provides that visitation privileges may be revoked upon an *ex parte* finding of reasonable cause, plaintiffs can "expect" no further process, and hence no further process is due. As has been recently noted by the Supreme Court, such an analysis "misunderstands the nature of the Constitution's due process guarantee". *Logan v. Zimmerman Brush Co.*, —— U.S. at ——, 102 S.Ct. at 1155. Because minimum procedural requirements are a matter of federal law, a state may not circumvent those requirements by specifying procedures that it may deem adequate for revoking protected interests. *Id.* At a minimum, due process requires the opportunity to be heard. Directive 4403 does not require that such an opportunity be afforded either before or after protected liberty interests are revoked; in the Purchells' case no such opportunity was given. Although prison officials may act in the best of faith in implementing Directive 4403, the Directive's procedural shortcomings introduce the risk of arbitrary action on their part. Accordingly, we hold that Directive 4403, by authorizing the revocation of visitation privileges without "*some* form of hearing", *Board of Regents v. Roth*, 408 U.S. 564, 570–71 n.8, 92 S.Ct. 2701, 2705 n.8, 33 L.Ed.2d 548 (1971) (emphasis in original), violates the Due Process Clause of the Fourteenth Amendment.

### 3. Relief

Having found those provisions of Directive 4403 that authorize the revocation of visitation privileges without due process protections unconstitutional, we hereby enjoin the defendants from further enforcement of those provisions. We also grant the Purchells' motion for preliminary relief, which has been pending since January 10, 1982. By virtue of this decision, the Purchells have well met the requirement of likelihood of success on the merits. Ms. Purchell's averments as to the effect of the suspension on herself and her children lead us to conclude the injuries suffered are irreparable. *See* Affidavit of Lisabeth Purchell at ¶¶ 5–6, 10. We thus order that the defendants either restore Ms. Purchell's visitation privileges, or provide a hearing on the matter within two weeks of the date of this decision. Should defendants choose the hearing option, it shall conform to the minimum due process requirements established in *Wolff v. McDonnell*: at least 24 hours advance written notice of the charged violation, and a written statement by the fact finders as to the evidence relied upon and the reasons for the action taken. 418 U.S. at 563, 94 S.Ct. at 2978. Mr. Purchell shall also be allowed to call witnesses and present documentary evidence at the hearing, so long as no undue hazards to "institutional safety or correctional goals" are created. 418 U.S. at 566, 94 S.Ct. at 2979. We stress that we are requiring that these procedures be used in the Purchell case only. As noted in the previous section, we do not find that the record before us permits a determination of what due process safeguards are constitutionally required for all cases and for all times. We do not see how these procedures could possible prove too onerous in the single case of the Purchells, however, and we thus order them in the interests of expediting the Purchells' relief.

SO ORDERED.

**10.** The letter sent to Ms. Purchell from the Superintendent and Acting Deputy Superintendent on November 9, 1981 only indicates:

In view of the incident surrounding your visit on November 8, 1981, please be advised that your visiting privileges have been suspended for a period of at least six (6) months. If you desire to have your visiting privileges restored at the time that this restriction expires, you should make this request known to the Superintendent of the facility Mr. Purchell is assigned to at that time requesting for restoration of your visiting privileges. This request should be submitted no sooner than the fifth month of suspension.

Upon receipt of your request, the records will be reviewed and a decision will be made at that time.