Anatol KOZLOWSKI, et al., Plaintiffs,

v.

Thomas A. COUGHLIN III, et al., Defendants.

James SIMS, et al., Plaintiffs,

v.

Thomas A. COUGHLIN III, et al., Defendants.

Nos. 81 Civ. 5886 (CES), 81 Civ. 2355 (CES).

United States District Court, S.D. New York.

June 6, 1988.

Supplemental Opinion Sept. 23, 1988.

As Amended April 5, 1989.

McCabe & Mack, by David L. Posner, Prisoners' Legal Services of N.Y., by Robert Selcov, David C. Leven, Poughkeepsie, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen., Albany, N.Y., by Jo Ann M. Becker, New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Defendants move pursuant to Fed.R. Civ.P. 60(b) for an order modifying a consent judgment entered between the parties in May 1983. For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs brought this civil rights action in 1981 challenging defendants' procedures for suspending or revoking prisoner visitation privileges in correctional facilities run by the New York State Department of Correctional Services ("DOCS"). The plaintiff class consists of all inmates in DOCS custody and their would-be visitors.

After both sides moved for summary judgment, this Court, in a decision dated March 22, 1982, held that visitation privileges are a liberty interest subject to the protection of the Due Process Clause of the fourteenth amendment, and that the regulations then in force violated plaintiffs' procedural due process rights. *Kozlowski v. Coughlin*, 539 F.Supp. 852 (S.D.N.Y.1982). After this Court issued its opinion, the parties entered into lengthy negotiations to establish appropriate due process procedures.

The product of these negotiations is a consent judgment signed by the parties and so ordered by the Court in May 1983. The consent judgment, the terms of which are currently embodied in 7 NYCRR § 200.1–200.5, set forth the procedures re-

quired prior to the suspension or revocation of any inmate's visitation privileges. The process due was linked to the severity of the proposed sanction, *i.e.*, the longer the threatened suspension of visitation privileges, the greater the procedures that would be afforded to both the inmate and the visitor.

Appended to the consent judgment was a table of penalties assigning sanctions of varying severity to various visitor-related offenses. For example, the introduction by a visitor of more than 25 grams of marijuana is punishable by up to six months suspension of *contact* visitations between the inmate and that visitor on the first offense; up to one year suspension of *all* visits between the inmate and that visitor on the second offense; and complete revocation of *all* visitation rights between the inmate and that visitor on the third offense. This table is contained in 7 NYCRR § 200.5.

Defendants now argue that the sanctions established by this appendix have been proven by experience to be inadequate, particularly in the area of drug-related misconduct. They further argue that the sanctions portion of the consent decree is ambiguous in several key respects and contains omissions which impair DOCS's ability to maintain proper order and discipline.

To remedy these perceived inadequacies, ambiguities, and omissions, defendants seek to make the following modifications:

(1) Increase the length of suspension for drug-related visitor-inmate misconduct.

(2) Provide for suspension of all contact visits for inmates found guilty in a disciplinary hearing of drug-related misconduct not specifically related to a particular visitor.

(3) Allow limitation, suspension, or revocation of an inmate's visiting privileges for misconduct not related to a specific visitor, but related to visiting generally.

(4) Grant discretion to defendants to impose greater penalties in certain "extraordinary" cases where such an increased sanction may be warranted.

(5) Provide for the cumulation of sanctions in the case of repeated inmate abuse of visiting privileges.

(6) Eliminate the present requirement that an inmate can lose visitation privileges only with regard to one specific visitor.

(7) Add sanctions for misconduct not currently on the table but which would constitute violations of the penal law.

## DISCUSSION

Defendants argue that they should be permitted to freely modify the penalty portion of the consent judgment because this portion should not be considered part of the judgment at all. In the alternative, defendants seek permission from the Court to make the specific modifications outlined above.

*Enforceability of Sanctions Provisions*

■ Defendants submit that we should construe the consent decree as containing only the due process procedures established in the body of the agreement. They argue that the penalty portion of the consent judgment constitutes neither the primary purpose nor an integral part of the settlement. According to defendants, the sanctions were never a material point of the litigation and plaintiffs' counsel did not attempt to negotiate the specific sanctions during the course of settlement discussions. Rather, defendants maintain that they established the penalty provisions on a purely *gratuitous* basis and appended them to the consent decree.

Plaintiffs strenuously object to this characterization, and offer substantial documentary evidence that the penalty provisions played a significant role in the settlement negotiations. Indeed, prior drafts of the sanctions reveal that many of plaintiffs' proposals were incorporated into the finished penalty table. May 11, 1988 Aff. of David L. Posner, Exs. A, B, and E. The sanctions appendix thus appears to be a bargained-for element of the consent decree and not a gratuitous offering by defendants which they may now modify at will.

■ Defendants next argue that this Court lacks jurisdiction to enforce the sanctions portion of the consent judgment because the sanctions are not mandated by the federal constitution. They maintain that the power of a federal court to restructure the operation of state government entities is not plenary, but may be exercised only on the basis of a constitutional violation. *See Dayton Board of Education v. Brinkman,* 433 U.S. 406, 419–20, 97 S.Ct. 2766, 2775–76, 53 L.Ed.2d 851 (1977); *Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Asserting that there is no constitutional right to a specific range of penalties for misconduct in the prison setting, defendants claim that we are barred by the eleventh amendment from enforcing the sanctions appendix. *Lelsz v. Kavanagh,* 807 F.2d 1243, 1252 (5th Cir.1987) (citing *Pennhurst State School v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

The eleventh amendment does not bar us from enforcing the sanctions portion of the consent decree. In *Pennhurst,* the Supreme Court held that the eleventh amendment prohibited a federal court from awarding injunctive relief against state officials based on state law. 465 U.S. at 124–25, 104 S.Ct. at 921. The Fifth Circuit in *Lelsz v. Kavanagh, supra,* applied the *Pennhurst* doctrine in holding that a federal court may not enforce that portion of a consent decree which was expressly based on state law. 807 F.2d at 1255. Defendants in the present case concede that the sanctions portion of the consent decree is not based on state law. Defendants' Reply Memorandum of Law at 2. Indeed, they suggest that those provisions "are not based upon any federal law or legal requirement whatsoever." *Id.* We agree that the penalty provisions are not predicated on state law, and therefore find that their enforcement cannot run afoul of the eleventh amendment. However, we do not agree that they have no basis in federal law.

■ A consent decree is "animate[d]" by the parties' agreement, but it must also emanate from the violation of federal law that is the basis for the court's jurisdiction over the claim. *Local Number 93, Firefighters v. City of Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986). For a federal court to entertain a consent decree, the decree must

spring from and serve to resolve a dispute within the Court's subject matter jurisdiction. Furthermore, consistent with this requirement, the consent decree must come within the general scope of the case made by the pleadings, and must further the objectives of the law upon which the complaint was based. However, in addition to the law which forms the basis of the claim, the parties' consent animates the legal force of the consent decree.

106 S.Ct. at 3077 (citations omitted).

■ The consent decree in the present case clearly meets the above conditions. Prompted by our finding that defendants' visitor sanction policy violated plaintiffs' fourteenth amendment due process rights, the parties entered into a stipulation "settling without the necessity of further litigation, the unresolved issue of what due process protections are appropriate." Stipulation of Settlement dated May 13, 1983 at 2. The decree set forth procedural requirements which varied in scope depending on the length of the threatened visitation suspension. In order to ensure that the appropriate procedures were followed in connection with a given visitor-related offense, the parties negotiated and included within the consent decree the table of sanctions presently in dispute.

Thus, this Court's authority to enforce the sanctions appendix derives not only from the parties' consent to be bound thereby, but also from the fact that the appendix sprang directly from our finding of a constitutional violation. Unlike *Pennhurst* and *Lelsz,* where the challenged remedies were expressly based on state law, the relief at issue in the present case is firmly rooted in federal law, and presents no eleventh amendment problem.

■ Moreover, if we were to adopt defendants' argument that they may unilater-

ally alter the sanctions table, plaintiffs will have been denied a full and fair hearing on their federal rights. Our March 22, 1982 Memorandum Decision addressed only the procedural due process claims contested in the summary judgment motions. *Kozlowski v. Coughlin,* 539 F.Supp. 852, 855 (S.D. N.Y.1982). Having entered into the consent decree rather than bringing the dispute to trial, defendants cannot now evade an integral portion of that decree on the ground that it was not directly tied to a federal claim. There is no way to determine what federal violations might have been established had this case been tried, or what remedies might have been available to cure these violations.[1] A federal court has "broad power" to remedy constitutional violations. *See Swann v. Charlotte–Mecklenburg Board of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971).

### Modification of the Consent Decree

In the alternative, defendants seek modification of the sanctions portion of the consent judgment pursuant to Fed.R.Civ.P. 60(b). They argue that modification is warranted because of (1) a change in decisional law since this Court's decision in *Kozlowski v. Coughlin,* 539 F.Supp. 852 (S.D.N.Y. 1982); (2) a change in circumstances, specifically an alleged increase in drug use in New York State correctional facilities since the enactment of the consent judgment; and (3) ambiguities and omissions in the consent judgment. Where circumstances, whether of law or fact, have changed, sound judicial discretion may call for modification of an injunctive decree. *New York State Ass'n for Retarded Children v. Carey,* 706 F.2d 956, 970–71 (2d Cir.1983), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983).

### A Change in Law

█ We reject defendants assertion that the law has significantly changed since this Court rendered its decision in *Kozlowski.* In our decision, we found that state law created plaintiffs' liberty interest in visitation. In so finding, we relied upon New York State judicial decisions, administrative regulations and departmental directives. For example, we relied upon *Cooper v. Morin,* 49 N.Y.2d 69, 424 N.Y.S.2d 168, 399 N.E.2d 1188 (1979), in which the New York Court of Appeals found that the State Constitution afforded pre-trial detainees a fundamental right to maintain relationships with family and friends. We also noted that a number of lower New York courts extended the right recognized in *Cooper* to convicted prisoners. *See McNulty v. Chinlund,* 108 Misc.2d 707, 438 N.Y.S.2d 734, 736 (Sup.Ct.Alb.Co.1981); *Bugliaro v. Wilmot,* 108 Misc.2d 425, 437 N.Y.S.2d 551, 553 (Sup.Ct. Chemung Co. 1981). Although *McNulty* was subsequently reversed on appeal, the Appellate Division did not find that the lower court erroneously extended *Cooper* to the convicted prisoner situation. *McNulty v. Chinlund,* 87 A.D.2d 707, 448 N.Y.S.2d 895, 896 (3rd Dept.1982). Rather, the court simply held that summary judgment was inappropriate because *Cooper* did not resolve "all issues of fact ... with respect to contact visitation regulations." 448 N.Y. S.2d at 896. *Cooper* and *Bugliaro* remain good law.

Defendants' contention that *Doe v. Coughlin,* 71 N.Y.2d 48, 523 N.Y.S.2d 782, 518 N.E.2d 536 (1987), limited the *Cooper* holding to the pre-trial detainee context is unavailing. In *Doe,* a divided New York Court of Appeals upheld the DOCS policy of denying conjugal visits to inmates diagnosed as suffering from AIDS. Although the plurality found that the inmate had no constitutional right to marital privacy, a majority of the court, including Chief Judge Wachtler in his concurring opinion, concluded that such a right existed and that its infringement should be subject to a heightened level of scrutiny. *See* 523 N.Y. S.2d at 791, 518 N.E.2d at 545. Moreover, *Doe* was a substantive due process case and cannot be interpreted as undermining

---

1. For example, the Amended Complaint alleged violations of plaintiffs' substantive due process rights under the Fourteenth Amendment and rights to association under the First Amendment. The summary judgment motions did not address these claims.

our decision in *Kozlowski*, which was based on procedural due process principles.

Moreover, our finding of a liberty interest in visitation was largely based on mandatory regulations and directives promulgated by New York State and DOCS. For example, 7 NYCRR § 301.6(a) provided that "no inmate shall be deprived of the . . . visiting privileges available to inmates in the general population." In addition, 7 NYCRR § 301.8 required that "no inmate is ever, under any circumstances, to be deprived of [visiting privileges] for the purpose of punishment or discipline." We found that these regulations "have the force and effect of law in New York." 539 F.Supp. at 857. Defendants' suggestion that these regulations cannot give rise to a liberty interest in visitation because they "can vanish with the wave of the administrator's wand" is contrary to well-established caselaw. *See, e.g., Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1982) (finding that mandatory administrative regulations give rise to a liberty interest in remaining in general prison population). The regulations we relied upon in *Kozlowski* employ the very sort of mandatory "shall" language found in *Hewitt* to give rise to a protected liberty interest. *See id.*

### Changed Circumstances, Ambiguities and Omissions

■ In arguing that the changed factual circumstances warrant modification of the consent judgment, defendants point to an increased incidence of drug use among the prison population. They offer statistics revealing a large proportion of inmates incarcerated for drug-related offenses (20% of prison population in 1987, as compared to 9.5% in 1982), and an increase in inmates with drug histories. In 1987, an estimated 2,000 drug-related misbehavior reports were issued. April 28, 1988 Aff. of Philip Coombe, ¶¶ 9, 10. Defendants claim that, along with corrupt prison officers and the prison package room, the visiting room is one of the main conduits through which such contraband is introduced. They therefore seek modification of the consent judgment to provide more severe penalties for the drug offenses presently listed on the sanctions appendix, and for the use of visitation sanctions for drug offenses not associated with particular visitors.

In addition, defendants claim that experience since the signing of the consent judgment has demonstrated that the judgment is ambiguous in several respects, and contains omissions which impair DOCS ability to maintain proper discipline and security. Defendants describe these ambiguities and omissions as follows:

(a) The rules do not allow for the cumulation of different acts of misconduct by the same inmate with the same visitor or different visitors.

(b) The rules are particularly geared toward visitor misconduct, rather than inmate misconduct which might be unrelated to a visit with a specific visitor.

(c) The rules do not allow discretion in considering the inmate's prior misbehavior record generally in determining appropriate sanctions.

(d) The sanctions do not cover very serious misconduct committed by an inmate in connection with visitation, but which does not necessarily involve a particular visitor.

Defendants seek to modify the consent judgment pursuant to Fed.R.Civ.P. 60(b) in order to remedy these perceived ambiguities and omissions.

Rule 60(b)(5) expressly authorizes a district court to relieve a party from a final judgment if "it is no longer equitable that the judgment should have prospective application." The power of a court to modify a decree of injunctive relief is "long established, broad and flexible." *New York State Ass'n for Retarded Children v. Carey,* 706 F.2d 956, 967 (2d Cir.1983), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1984). Particularly in institutional reform litigation such as this, remedies must be open to revision when "unforeseen obstacles present themselves." *Id.* at 969. The Second Circuit in *Retarded Children* stated:

While changes in fact or in law afford the clearest bases for altering an injunc-

tion, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes.

706 F.2d at 969 (quoting *King–Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F.2d 31, 35 (2d Cir.1969)).

The primary purpose of the consent judgment in this case was to afford due process to inmates and their visitors prior to any deprivation of their visitation rights. This was necessitated by our holding that inmates and their visitors have a protected liberty interest in maintaining visitation. Because the specific procedures due were contingent upon the length of the threatened suspension, the parties negotiated and included within the consent judgment a detailed table assigning determinate penalties to enumerated visitor-related offenses. Given this Court's holding which necessitated the consent judgment, and given the known rehabilitative benefits of maintaining visitation between inmates and their family and friends, the sanctions table was devised with the purpose of circumscribing the situations in which inmates and visitors could be denied visitation. This is reflected in the fact that visits were only to be suspended as between an inmate and a particular visitor for misconduct in which that visitor was personally involved.

By seeking to remedy the so-called "deficiencies," "ambiguities," and "omissions" in the consent judgment, defendants are in fact seeking to broaden the intentionally limited scope of the negotiated decree. Defendants now feel overly constrained by the decree's limitations, and argue that broader use of visitation sanctions would better promote prison discipline and security. However, defendants' present dissatisfaction does not, by itself, provide a basis for modifying the consent decree which they willingly entered into. As the Second Circuit observed in *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir.1986):

The legal consequences of a stipulation incorporated in a court order may not be undone simply because, with the benefit of hindsight, stipulating turns out to be an unfortunate tactic. Although obviously better informed than foresight, an argument based on hindsight is not a ground upon which a court may grant Rule 60(b) relief.

793 F.2d at 59–60. This is particularly true where, as here, the decree reflects sound policy choices which would be undermined by the proposed modifications.

The consent decree, as currently drafted, uses visitation sanctions only for those offenses committed during the course of visitation by an inmate and a particular visitor. This reflects the fact that the plaintiff class is made up of visitors as well as inmates. Using visitation sanctions to punish inmates for misconduct not involving particular visitors would run counter to the decree's goal of securing the rights of visitors, and would render superfluous the procedures accorded visitors. Family and friends of inmates would be denied visitation on the basis of misconduct in which they were not involved, and would have no procedures by which to challenge such deprivation.

Thus, we disallow any modifications which would permit the use of visitation sanctions for inmate misconduct not involving a particular visitor. These include punishing inmates for drug offenses committed outside the visiting room, and for penal law violations occurring inside the visiting room but not connected with a specific visitor. Defendants have adequate means at their disposal for punishing such misconduct without having to resort to an expanded use of the visitation penalty. For example, nothing in this decision limits defendants' ability to punish such inmate misconduct, following a superintendent's hearing[2], by means of special confinement, loss of privileges other than visitation, or loss of good behavior allowance. Defendants

---

**2.** Unlike the procedures embodied in the consent decree, which extend to both inmates and visitors, superintendent's hearings involve inmates only, and are the regular proceedings by which inmate misconduct is dealt with in the prison. *See Wolf v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

may be correct that visitation sanctions are the most effective deterrent for drug-related and other offenses. But this simply underscores the crucial role visitation plays in the life of an inmate, and reinforces the rationale underlying the consent decree's limitations on the circumstances in which this important right can be taken away.

Similarly, enhancing a visitation sanction by either considering an inmate's prior misbehavior record or cumulating acts of misconduct involving different visitors would contravene the consent decree's underlying rationale by punishing one visitor for misconduct engaged in by others. These proposed modifications are therefore disallowed.

However, it would not contravene the purposes of the consent judgment to enhance a penalty by cumulating different acts of misconduct involving the same visitor.[3] Such cumulation would serve as an added deterrence and yet be fully consistent with the consent judgment's overall scheme. Defendants shall submit, within thirty days of entry of this judgment, a proposed modification specifically setting forth the precise manner in which different prior acts of misconduct involving a particular visitor will be cumulated to enhance visitation sanctions. Plaintiffs will then have thirty days to submit any objections to this proposed modification.

Defendants' proposed modification which would give them discretion to increase prescribed penalties in so-called "extraordinary" cases is disallowed. In light of the consent judgment's scheme of linking the procedures due to the length of the threatened penalty, the sanctions appendix has as its express purpose the assignment of determinate penalties to all visitor-related offenses. The modification sought by defendants would defeat this purpose by injecting uncertainty into the sentencing process. Defendants have made no showing that such a modification is warranted.

■ Finally, defendants seek to enhance the sanctions for the drug-related offenses already listed in the appendix. Preventing the introduction of drugs into the visiting room is certainly a legitimate penological objective. Defendants have sufficiently shown that the present sanctions have not eradicated the smuggling problem. Because this modification is tied to particular visitors and specific instances of smuggling, it does not suffer from the overbreadth that plagues defendants' other proposed drug-related modifications, *i.e.*, it does not punish visitors who have had nothing to do with the inmate's drug offense. This modification does not contravene the purposes of the consent judgment, and is therefore allowed.

## CONCLUSION

Defendants' motion to modify the May 1983 consent judgment is granted in part.

The consent judgment will be modified to allow for the cumulation of different acts of misconduct involving the same visitor. Defendants shall submit, within thirty days of entry of this judgment, a proposed modification specifically setting forth the precise manner in which different prior acts of misconduct involving a particular visitor will be cumulated to enhance visitation sanctions. Plaintiffs will then have thirty days to submit any objections to this proposed modification.

The consent judgment will further be modified to increase, to the extent proposed by defendants, the visitation suspensions for the drug-related offenses presently listed on the penalty appendix.

In all other respects, defendants' motion is denied.

SO ORDERED.

## SUPPLEMENTAL OPINION

■ In our Memorandum Decision dated June 6, 1988, we granted, *inter alia*, that portion of defendant's Fed.R.Civ.P. 60(b) motion seeking modification of the May 1983 consent judgment between the parties so as to allow greater cumulation of penalties than is presently permitted. We or-

---

3. As the consent judgment is presently structured, only like offenses may be cumulated for the purpose of enhancing a sanction against a particular visitor.

dered defendants to submit a proposal "specifically setting forth the precise manner in which different prior acts of misconduct involving the same visitor will be cumulated to enhance visitation sanctions." *Kozlowski v. Coughlin,* 83 F.Supp. 711, 90 (1988). Defendants have proposed the following language:

> The following penalties are intended as discretionary guidelines. A cumulative penalty consisting of up to an additional six months suspension of all visiting privileges may be imposed on an inmate and visitor if they have been involved in two or more unrelated misconducts with each other within a one year period. The one year period shall run from the date of the most recent pending misconduct(s).

Following plaintiffs' written objections, defendants agreed to alter their proposal by removing the "discretionary guidelines" language of the first sentence and substituting, "The following are intended as the penalties for visit related misconduct."

We agree with plaintiffs that defendants' proposal, even as altered, would modify the consent judgment in a manner much greater than intended by this Court. For example, the proposal would allow defendants to impose up to six months additional loss of all visitation on the basis of two different, relatively minor acts of misconduct, even if neither type of misconduct would be punishable by a six-month visitation suspension on a second or even third offense. By way of illustration, if an inmate were found guilty of engaging in a minor visiting room disturbance less than a year after having been found guilty of engaging in unacceptable contact with the same visitor, six months of additional visitation suspension may be tacked on to the latter punishment even though neither infraction would be punishable by more than a total of three months suspension on the *third offense. See* 7 NYCRR § 200.5(5)(f). To avoid this anomaly, plaintiffs' counterproposal would completely exclude an entire class of "relatively minor" visitation infractions from the cumulation provision.

We settle upon a path somewhere between those urged by plaintiffs and defendants. The cumulation provision shall read as follows:

> § 200.5(f). The following are intended as the penalties for visit related misconduct. In addition, a cumulative penalty consisting of up to an additional six months suspension of all visiting privileges may be imposed on an inmate and visitor if they have been involved in two or more unrelated types of misconduct with each other within a one year period. The one year period shall run backward from the date of the most recent pending misconduct(s). However, the additional penalty imposed by virtue of cumulating a number of different misconducts shall in no event exceed the total penalty permitted for the equivalent number of repetitions of the least serious misconduct.

For example, if an inmate or his visitor is found guilty of possessing alcohol (intent unlikely), and within a year the same visitor is found guilty of presenting false identification to gain entry to the family reunion program, then visitation rights may be suspended for as many as six months (three months for the present false identification charge, first offense, plus three additional months representing the suspension permitted on the *second offense* of the less serious alcohol charge).[1]

We find that this modification would best serve the interest of defendants in punishing repeated acts of visitor-related misconduct, while adhering to the policies embodied in the 1983 consent decree.

SO ORDERED.

---

1. Under defendants' proposal, the same combination of infractions could result in up to nine months loss of visitation (three months on the false identification charge plus up to six months additional penalty due to the prior alcohol charge). Plaintiffs' proposal would permit a total penalty of no more than three months (representing only the penalty on the false identification charge since the alcohol charge would lie outside the cumulation provision).