Edward A. RASO

v.

John J. MORAN.

Civ. A. No. 80–0431.

United States District Court,
D. Rhode Island.

Nov. 8, 1982.

Mark Mandell, and Martin W. Aisenberg, Providence, R.I., for plaintiff.

Stephen Robinson, Asst. Counsel, R.I. Dept. of Corrections, Cranston, R.I., for defendant.

## OPINION

PETTINE, Senior District Judge.

This action which was brought pursuant to 42 U.S.C. § 1983, involves Plaintiff Raso's rights under R.I.G.L. § 42–56–25 (1971). That statute sets out certain conditions under which a prisoner incarcerated at the Adult Correctional Institutions can donate blood in exchange for having time deducted from his sentence. The plaintiff contends that the defendant's failure to provide him with the opportunity to participate in the Rhode Island blood donation program as a result of his transfer to an out-of-state federal prison violated his rights under the Due Process Clause of the Fourteenth Amendment. He seeks to enjoin the defendant from denying him the right to donate blood, regardless of where he is incarcerated, without a hearing to determine his eligibility. He also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 (1982), that the deprivation of his statutory right to give blood under R.I.G.L. § 42–56–25 without a hearing violates his Fourteenth Amendment due process rights.

This Court has already denied the defendant's motion to dismiss for failure to state a claim upon which relief can be granted. *Raso v. Moran,* No. 80–0431, slip op. (D.R.I. February 4, 1981). In that opinion, the Court observed that the plaintiff's claim presents two questions. First, do Rhode Island prisoners have a right or justifiable expectation rooted in State law that they will be able to give blood in exchange for having time deducted from their sentence? Second, may a state prisoner be denied the opportunity to donate blood because he has been transferred to federal custody to serve his state sentence? *Id.* at 1.

Subsequent to the denial of the defendant's motion to dismiss, the parties stipulated that they would both move for summary judgment on the issue of whether R.I.G.L. § 42–56–25 or the policy and practices of the Department of Corrections create a constitutionally protected right for an inmate incarcerated pursuant to Rhode Island law

to donate blood and thereby reduce his sentence.[1] In accordance with this stipulation, both parties have moved for partial summary judgment on the basis of the stipulated facts. This opinion addresses these cross-motions.

### Facts

The facts in this case are undisputed and may be simply stated. Plaintiff Raso was incarcerated in the Adult Correctional Institutions (ACI) until his involuntary transfer on September 20, 1978 to a federal prison in Illinois. Prior to his transfer he had been permitted to donate blood and in return have time deducted from his sentence. Afterwards, however, Raso requested and was denied the right to participate in the blood donation program. Inmates remaining at the ACI, on the other hand, continued to be able to donate blood and reduce their sentences. Since filing his complaint, Raso has been returned to the ACI and is, presumably, again being permitted to participate in the blood donation program.

### Discussion

A. Mootness

As an initial matter, the Court must determine whether this case presents a live case or controversy in light of Raso's return to the ACI. Although neither party has raised the issue of mootness, the Court is obligated to consider this question on its own initiative because "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Since in this case the plaintiff is no longer suffering the harm that led to his complaint, consideration of mootness is unavoidable.

The general rule that governs mootness determinations is well established; a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Here, there is no live controversy because Raso is not presently being denied the opportunity to give blood. Upon being sent back to the ACI, he assumed the same rights as other inmates to participate in the blood donation program. Nor is Raso currently being denied a legally cognizable interest. He has not sought damages against the State or credit for the blood time denied him as a result of his transfer.[2]

Even though a case does not present a "live" controversy, it can still be heard if it is "capable of repetition, yet evading review". *See e.g., Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). In the absence of a class action, a case is considered capable of repetition, yet evading review where two elements combine: (1) the challenged action is in its duration too short to be fully litigated prior to its expiration and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Id.; Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (*per curiam*). Not every

1. Since the Court holds that R.I.G.L. § 42–56–25 creates a liberty interest in making blood donations and receiving a commensurate sentence reduction, it need not consider whether the policies and practices of the Department of Corrections also create such an interest.

2. It is clear that Raso could not have sought credit for blood time denied to him as a result of his transfer in this § 1983 action. *See Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 1840–1841, 36 L.Ed.2d 439 (1973) (habeas corpus, not § 1983 suit, is proper vehicle for challenging the duration of confinement); *Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 2973, 41 L.Ed.2d 935 (1974) (restoration of good time credits improperly denied cannot be obtained in a § 1983 suit); *Hill v. Hutto,* 537 F.Supp. 1185, 1192 (D.Va.1982) (same). It also is likely that Raso could not seek money damages against the State because of the Eleventh Amendment bar. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Marrapese v. State of Rhode Island,* 500 F.Supp. 1207, 1223 (D.R.I.1980) (Rhode Island has waived its Eleventh Amendment immunity "at least insofar as the challenged official conduct would have been tortious at common law"). This question, however, is not before the Court and thus need not be decided.

action of short duration is reviewable. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt,* 102 S.Ct. at 183.

The present case falls within the capable of repetition, yet evading review doctrine.[3] Raso has been transferred to out-of-state prisons twice within the last four years. He resided in an out-of-state prison from December 2, 1979 to April 24, 1980 and from August 8, 1980 to August 27, 1981. Although he filed the affidavit giving rise to this case soon after his second transfer, his claim still has not been resolved. There is thus reason to believe that the periods in which Raso resided in out-of-state prisons were too short to litigate his complaint. Moreover, in light of the frequency with which Raso has been transferred from the ACI, there is a demonstrated probability that he will be transferred again. The capable of repetition, yet evading review test is therefore satisfied. This Court need not wait until Raso is deprived of the rights to which he claims he is entitled for a third time, before deciding if indeed he possesses those rights.

**B. The Merits**

**I**

■ The threshold issue that this Court must consider is whether R.I.G.L. § 42–56–25 creates a liberty interest which is protected by the Due Process Clause of the Fourteenth Amendment. The plaintiff claims that he is entitled to certain procedural protections to insure that a *state-created right* is not arbitrarily abrogated. The plaintiff does not, and indeed could not, contend that he maintains a liberty interest in giving blood that is based on the Constitution itself. *See Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–2539, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

■ Whether a state statute creates a protectible liberty interest must be decided on a case-by-case basis. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). In making this determination, the Court must consider the language and structure of the statute at issue. *Id.* If it is found that Rhode Island has created a right to blood-time which can only be denied a prisoner under limited, specifically acknowledged circumstances, then the prisoner's interest has real substance and is sufficiently embraced within the "liberty" protected by the Fourteenth Amendment to entitle him to the minimum level of due process protection appropriate under the circumstances. *Cf. Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (due process protected inmates from the arbitrary loss of the statutory right to good time credits).

■ The critical issue that must be addressed in deciding whether a state statute creates a protectible liberty interest is the extent to which state officials can exercise discretion in administering that statute. *See Meachum v. Fano,* 427 U.S. at 228, 96 S.Ct. at 2540; *Garcia v. De Batista,* 642 F.2d 11, 14 (1st Cir.1981); *Lombardo v. Meachum,* 548 F.2d 13, 14–15 (1st Cir.1977); *Wright v. Enomoto,* 462 F.Supp. 397, 402 (N.D.Cal.1976), *aff'd mem.,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). As the First Circuit said in *Garcia:* "The surest source of a state-created liberty interest is an explicit grant of right in positive law not to be treated adversely absent certain conditions. Such a right may be created by statute or by prison rules and regulations." 642 F.2d at 14. Thus, in *Meachum* the Supreme Court held that a Massachusetts transfer statute did not entitle state prisoners to due process protection because the transfers were "not conditioned upon the occurrence of specific events", 427 U.S. at

---

**3.** After learning that Raso had been returned to the ACI, the Court became concerned that the case was moot. To aid in its consideration of the mootness question, it sought additional factual information from the parties. *See* Letter from Judge Raymond J. Pettine to Counsel, October 14, 1982.

226–27, 96 S.Ct. at 2539–40, and because "prison officials [had] discretion to transfer prisoners for any number of reasons." *Id.* at 228, 96 S.Ct. at 2540. *See also Lombardo v. Meachum,* 548 F.2d at 14.

In the present case, the plaintiff contends that he has a protected liberty interest in making blood donations based on R.I.G.L. § 42–56–25, which provides, in relevant part, that:

[A]ny prisoner sentenced to imprisonment for thirty (30) days or more in the adult correctional institutions ... shall be entitled to have deducted from the term or terms of sentence of such prisoner ten (10) days for each pint of his or her blood donated by him or her to any veterans' organization, civil defense unit, hospital, the armed forces of the United States, or the Red Cross or any fraternal or religious organizations or for the purposes of scientific research. Each prisoner shall be limited to four (4) donations each year. Any reduction of sentence so earned shall not be subject to forfeiture. The blood so donated shall· not be used in any way commercially or for profit. The assistant director of adult services shall keep a record of all such blood donors and the amounts of blood donated by each prisoner. . . .

R.I.G.L. § 42–56–25 (1971).

The plaintiff argues that the mandatory language, objective criteria and specificity of this statute create an entitlement in making blood donations and receiving a commensurate sentence reduction. The defendant counters that "the inmates' liberty interest in having time deducted from his sentence can only arise once that blood donation is made and that there is no right for an inmate to have blood taken." Defendant's Memorandum in Support of Motion for Summary Judgment at 3. Any other interpretation, the defendant contends, would warp the plain meaning of the stat-

ute and lead to an absurd result; an inmate would be entitled to a sentence reduction merely because he was willing to give blood. It would make no difference whether he actually donated blood or whether there was a need for his blood. A statute designed to benefit the public by encouraging inmates to donate blood would thereby be interpreted "as being intended primarily to create rights for inmates to a sentence reduction." *Id.* at 4.

The Court does not find the defendant's characterization of the Rhode Island blood-time statute convincing. The language and structure of the statute simply do not give state officials discretion as to whether to administer a blood program. According to the statute's express terms *"any* prisoner sentenced to imprisonment for thirty (30) days or more ... *shall be entitled"* to a ten (10) day sentence reduction for each pint of blood donated to one of several charitable organizations or for scientific research. The statutory directive that "any prisoner ... shall be entitled" to reduce his sentence by donating blood requires prison administrators to establish a blood donation program in which all qualified inmates can participate.[4] While it is possible that qualified inmates will not be able to give blood because there is no need for it, state prison officials do not possess the authority under the statute to deny qualified inmates the opportunity to give blood which is in fact needed.

The mandatory character of R.I.G.L. § 42–56–25 is further illustrated by a comparison of its language with the language of other Rhode Island statutes that permit inmates to reduce their sentences. R.I.G.L. § 42–56–24 (1971) permits inmates to have time deducted from their sentences for good behavior, but expressly conditions such a deduction on the consent of the director of the department of corrections or his designee. *See Lee v. Kindelan,* 80 R.I.

4. The Court does not accept the defendant's suggestion that the statute be interpreted to create an entitlement to a sentence reduction only after blood is actually donated. Such an interpretation could undermine the statutory purpose of providing additional blood for quali-

fied donee organizations. It would permit prison officials to prevent qualified donee organizations from having inmate blood made available to them by simply refusing to allow inmates to make blood donations.

212, 95 A.2d 51, *cert. denied,* 345 U.S. 1000, 73 S.Ct. 1146, 97 L.Ed. 1406 (1953). Similarly, R.I.G.L. § 42–56–26 (1981 Supp.) permits inmates to reduce their sentences, but only when the director or his designee determines that an inmate has performed heroic acts or submitted useful ideas that benefit others. In contrast, the blood-time statute does not provide a conditional right to give blood in return for a sentence reduction. Inmates' right to give blood depends only on their health status and the need for that blood, not on a discretionary determination by prison officials that blood may be given.

The limited discretion given prison officials in administering the blood donation program is apparent from both the face of the statute and the Department of Corrections own interpretation of the scope of the statute. *See* Department of Corrections, Operational Memorandum: Blood Donations. The statute limits inmates' participation in the blood donation program by 1) making a thirty (30) day or more term of imprisonment a prerequisite to the giving of blood in exchange for a reduced sentence; 2) specifically defining the purposes for which, and organizations to whom blood can be given; and 3) allowing an inmate to donate blood only four times a year. Consistent with these statutory requirements, the Department of Correction's Operational Memorandum states that its purpose is "(t)o assure that inmates of the Adult Correctional Institutions have reasonable and orderly access to available blood donation programs." The Memorandum then sets out five "standards" relating to the operation of the program. These standards provide that inmates shall be given an opportunity to donate blood in accordance with a pre-established rotation system. This opportunity will not be denied unless the inmate is disqualified from participation in the program because of an active health problem or because the statutorily authorized donee programs do not need blood. Nowhere does the Operational Memorandum vest discretion in prison administrators as to who may participate in the blood-time program.

Interpreting R.I.G.L. § 42–56–25 to create a protectible liberty interest in the making of blood donations does not, as the defendant contends, mean that an inmate willing to donate blood will be entitled to a sentence reduction regardless of whether he actually makes a donation. Read together the statute and the Operational Memorandum implementing it create two separate protected interests. First, inmates have a legitimate expectation that they will be given the opportunity to donate blood up to four times a year in return for a ten day sentence reduction for each pint of blood donated, absent disqualification for health reasons or lack of interest by statutorily authorized donee organizations. Since individual prisoners in Rhode Island can only be denied the opportunity to attain blood-time credits if they are unhealthy, the determination as to a prisoner's health status becomes critical, and the minimum requirements of procedural due process appropriate under the circumstances must be observed.[5] *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The second protectible interest created by R.I.G.L. § 42–56–25 is triggered once an inmate actually donates blood. The donation of blood, under the terms of the statute, entitles an inmate to a reduction in his sentence. This entitlement cannot be taken away because the blood time statute expressly provides that "(a)ny reduction of sentence so earned shall not be subject to forfeiture."

## II

This Court's determination that Rhode Island law creates a protected liberty interest in the donation of blood does not, of course, answer the question of what process is due before that opportunity is taken away. Nor does it answer the specific question presented by this case of whether and under what circumstances the plaintiff can

---

5. Although an inmate may also be denied the opportunity to donate blood because of lack of need, such a denial is not based on an individu- alized determination as to eligibility and, accordingly, need not be protected by procedural due process safeguards.

be denied his constitutionally protected interest in obtaining a sentence reduction by donating blood as a result of his transfer to an out-of-state federal prison. To decide the present case, it is necessary to determine what process is due under the blood time statute, before considering what is required in the context of an inmate's transfer to an out-of-state prison. Accordingly, these questions will be addressed in turn.

The general guidelines for defining what constraints due process places on government decisionmaking are well established. Due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances," *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), but rather "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). *See Mathews v. Eldridge,* 424 U.S. 319, 333, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The Supreme Court has considered three distinct factors in defining the requirements of due process in a particular case. "First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail...." *Id.* at 335, 96 S.Ct. at 903.

In the present case there can be little doubt that the deprivation of an inmate's opportunity to reduce his sentence by donating blood is a matter of considerable importance. Denial of this opportunity is substantially similar to the denial of prisoners' right to retain good time credits considered in *Wolff v. McDonnell,* 418 U.S. at 561, 94 S.Ct. at 2977. In *Wolff* the Supreme Court distinguished the deprivation of good time credits from the revocation of parole. It observed that:

For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected, and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that.

*Id.*

Nevertheless, the Court concluded that "(t)he deprivation of good time is unquestionably a matter of considerable importance. The State reserves it as a sanction for serious misconduct, and we should not unrealistically discount its significance." *Id.*

Although Rhode Island does not deny prisoners the opportunity to donate blood as a sanction for serious misconduct, this Court is convinced that participation in the blood donation program is an important private interest. The Court does not read *Wolff* as viewing good time credits as important solely because they could be revoked as a sanction for serious misconduct. Rather, it interprets *Wolff* as merely acknowledging that, although loss of good time credits is not as serious as loss of parole, it would be unrealistic to view a right that directly affects the duration of an inmate's sentence and possibly affects the actual duration of his confinement as not being an important one.

The second, and most significant, factor that the Court must consider in determining what procedures are necessary to protect an inmate from the wrongful deprivation of the opportunity to give blood "is the nature of the relevant inquiry". *See Mathews v. Eldridge,* 424 U.S. at 343, 96 S.Ct. at 906. As has been noted, prisoners in Rhode Island can only be denied the opportunity to

participate in the blood donation program if they are unhealthy. A determination as to health status will in most cases be routine and, consequently, easily made on the basis of objective, written documentation. *Cf. Mathews v. Eldridge,* 424 U.S. at 343–44, 96 S.Ct. at 906–907 (medical determination as to whether to discontinue disability benefits relatively sharply focused and easily documented decision). The focused nature of this determination is an important factor to consider in evaluating the fairness and reliability of existing procedures and the probable value, if any, of additional procedural safeguards.

■ After carefully considering and balancing the private and governmental interests at stake in this case, the Court has concluded that before an inmate can be denied the opportunity to participate in the blood donation program, he must be provided notice, the opportunity to submit written evidence as to his health status and a statement of reasons for his disqualification from the program. Such procedures will ensure that an inmate is permitted to submit additional and independent medical evidence and thereby challenge the accuracy of a tentative decision in favor of disqualification. Moreover, instituting these procedures will place only a minimal fiscal and administrative burden on the State.

The Court does not believe that due process requires an evidentiary hearing. The potential value of an evidentiary hearing, or even an oral presentation to the decisionmaker, in this case is slight. The blood-time statute is so narrowly drawn and prison officials' discretion as to when they can deny an inmate the opportunity to participate in the program so limited that a hearing would not significantly add to the other procedural due process protections required in this decision.

### III

■ The final and most difficult issue presented in this case involves whether a prisoner can be denied the opportunity to donate blood as a result of his transfer to an out-of-state federal prison. Certainly,

there is an element of unfairness in the fact that a prisoner convicted under Rhode Island law and sentenced to serve his term in a Rhode Island prison can be deprived of the right to reduce his sentence in a way afforded to all other Rhode Island inmates simply by being transferred out-of-state. Nevertheless, it is not an easy task to determine the extent of the plaintiff's legal interest in retaining rights affecting the duration of his sentence upon his transfer.

The Supreme Court has already rejected the view that "the Due Process Clause in and of itself protect(s) a duly convicted inmate against transfer from one institution to another within the state prison system." *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The First Circuit has extended this analysis by holding that for the purpose of procedural due process, there is no constitutional difference between intrastate and interstate prison transfers. *Sisbarro v. Warden, Massachusetts State Penitentiary,* 592 F.2d 1, 3 (1st Cir.), *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). As a constitutional matter, therefore, the plaintiff cannot object to his transfer on the ground that it places him in substantially more burdensome conditions than he had been experiencing. The plaintiff simply does not possess any federally created liberty interest in remaining in a particular prison, absent a state law creating such an interest.

While the Rhode Island transfer statute, R.I.G.L. § 13–12–3 (1981), does not give the plaintiff a constitutionally protected liberty interest in remaining in a Rhode Island prison, *Gomes v. Moran,* 468 F.Supp. 542 (D.R.I.), *aff'd* 605 F.2d 27 (1st Cir.1979), this does not resolve the issue in the present case. Under the blood-time statute the plaintiff is entitled to a statement of reasons explaining his disqualification from the blood-time program. It is immaterial whether an inmate is denied the opportunity to reduce his sentence through donating blood due to his ill health or his transfer out-of-state. In either case he is entitled to know the reasons why he is being denied his constitutionally protected liberty interest in

making blood donations. This is not to say that the blood-time statute may be relied on by an inmate to object to his transfer. Rather, it simply entitles the inmate to an explanation as to why his transfer makes his participation in the blood-time program no longer possible.

■ Requiring a statement of reasons as to why a prisoner transferred out-of-state cannot continue to participate in Rhode Island's blood donation program has certain consequences for prison officials' administration of the prison transfer statute, R.I.G.L. § 13–12–3 (1981). Under that statute, state prisoners transferred out-of-state are subject to the law applicable to federal offenders, *unless otherwise specifically authorized in the contract.* The statute thus provides state officials with an opportunity to contract for an inmate's continued participation in the blood-time program in the out-of-state prison prior to the inmate's transfer. It would seem that as long as the transferee facility is physically equipped to allow an inmate to donate blood, there would be no objection to his continued participation in the Rhode Island program. At any rate, state officials must take advantage of the opportunity to secure an inmate's right to continued participation through negotiation, and in such negotiations make a good faith effort to perpetuate for the inmate the blood donation program in the transferee prison. It would hardly be possible for the State to provide an inmate with a statement of reasons as to why transfer makes his continued participation in the blood time program no longer possible without having taken reasonable steps to see if this was in fact the case.[6]

---

**6.** The State, not this Court, must establish guidelines under which inmates transferred out-of-state may participate in the Rhode Island blood donation program. To facilitate the development of appropriate guidelines, however, the Court believes that it should make it clear that it does not read R.I.G.L. § 42–56–25 to require an inmate to donate blood to statutorily authorized donee organizations in Rhode Island. The statute provides that an inmate shall be entitled to a sentence reduction for blood donated "to *any* veterans' organization, civil defense unit, hospital, the armed forces of the United States, or the Red Cross or any fraternal or religious organizations or for the

The plaintiff's request for declaratory relief is hereby granted in accordance with the terms of this opinion. Plaintiff will prepare an Order in accordance with this Opinion.

purpose of scientific research." (emphasis added). There is no requirement that the donation be made to a Rhode Island-based organization. Indeed, some of the organizations specifically mentioned in the statute are nationally-based. Accordingly, the State need not establish procedures for transporting blood donated by a Rhode Island inmate in an out-of-state prison back to Rhode Island. Rather, they need only set up procedures under which a Rhode Island inmate who donates blood to a statutorily authorized organization out-of-state receives the same credit for that donation that he would have received had the donation been made in Rhode Island.