Abdul Y. SALAHUDDIN, Plaintiff,

v.

Thomas A. COUGHLIN, et al., Defendants.

No. 83 CIV. 3578 (PKL).

United States District Court, S.D. New York.

Nov. 30, 1987.

Rosenman Colin Freund Lewis & Colin, New York City, for plaintiff; Asa D. Soko-low, Ethan V. Finneran, Barbara R. Sutton, of counsel.

Robert Abrams, Atty. Gen., New York City, for defendants; Grace A. Brannigan, Jeffrey I. Slonim, of counsel.

## OPINION & ORDER

LEISURE, District Judge:

This is a civil rights action brought under 42 U.S.C. § 1983 by an inmate at the Green Haven, New York Correctional Facility ("Green Haven") against various prison administrators. The plaintiff, Abdul Y. Salahuddin ("Salahuddin"), upon receiving a requested transfer from Auburn Correctional Facility ("Auburn") to Green Haven, found that his wage grade, and hence the amount of his compensation, had been reduced from one of the highest levels to one of the lowest. Plaintiff protested this demotion through the Inmate Grievance Program at Green Haven, and requested that his wage grade remain at its prior level. This request was denied.

In April, 1983, plaintiff filed a *pro se* complaint against the New York Commissioner of Correctional Services and the superintendants of Auburn and Green Haven Correctional Facilities. Shortly thereafter, plaintiff was assigned counsel. Through memoranda and other papers, plaintiff's counsel has clarified the scope of the original complaint.

The gravamen of the complaint is that plaintiff's constitutional rights have been denied because plaintiff had a legitimate expectation of continuing in his wage grade from one facility to the next. This expectation constitutes a property right in the wage grade assignment. By demoting him without providing either notice or a hearing, plaintiff contends that defendants have denied him his due process rights under the fourteenth amendment. The complaint alleges further that defendants, by making distinctions between inmates transferred for program purposes and those transferred for purposes of population distribution, arbitrarily violated plaintiff's right to equal protection under the fourteenth amendment. In addition to reinstatement of his

prior wage grade, plaintiff asks for $10,000 in punitive and compensatory damages for mental and emotional suffering.

Federal courts traditionally have been reluctant to rule on problems relating to prison administration. *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). This reluctance stems, in part, from the court's view of the problems faced by prison administrators and the efficacy of judicial intervention. Prison administrators have an extremely broad responsibility not only for maintaining order and security but "for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody." *Id.* See also *Hall v. Curran,* 818 F.2d 1040, 1043 (2d Cir.1987) (discussing the importance of allowing experienced corrections officials to manage prisons). Most prison problems are not susceptible to resolution by judicial decree. Moreover, when a federal court is asked to deal with a state correctional facility, there are further reasons to defer to those charged with administering the institutions. *Procunier,* 416 U.S. at 405, 94 S.Ct. at 1807. Nevertheless, when the complaint before the court involves a fundamental constitutional guarantee, federal courts have a duty, and will discharge the duty, of protecting the inmate's constitutional rights. *Id.* at 405–06, 94 S.Ct. at 1807–08 (citing *Johnson v. Avery,* 393 U.S. 483, 486, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969)).

Previously, the Court heard defendants' motion for judgment on the pleadings which was brought pursuant to Fed.R.Civ. P. 12(c) on the grounds that the complaint failed to state a claim upon which relief could be granted. In denying the motion, the Court stated that, although plaintiff's demotion was not contrary to Department of Correctional Services guidelines, "Salahuddin should nevertheless be permitted to attempt to prove that there was a 'common law' or general understanding regarding continuation of pay grade upon transfer, so that he in effect had an entitlement to continuation of the pay grade he had earned at Auburn." Order of the Court, February 26, 1985, at 4.

Defendants are now moving for summary judgment under Fed.R.Civ.P. 56(b) on the grounds that, even after protracted discovery, there is no factual evidence establishing a legal claim cognizable by the Court pursuant to 42 U.S.C. § 1983.[1]

Plaintiff Salahuddin is cross-moving for summary judgment on the grounds that he has a property interest in his pre-transfer wage grade because the State, through the Department of Correctional Services, has created in him a legitimate claim of entitlement which cannot be removed without due process. Due process was never provided. For reasons which are fully developed below, we grant defendants' motion and deny plaintiff's cross-motion for summary judgment.

## FACTUAL BACKGROUND

There is no dispute between the parties as to the facts material to the decision in this case. From the commencement of his incarceration in 1978 until February, 1983, Salahuddin was an inmate at Auburn. During that period, Salahuddin took part in a job training program in which he progressed from a compensation level of Wage Grade I ($.90 per day) to Wage Grade IV Step 2 (also described as Grade 4.2) which paid him $2.19 per day.[2] In December, 1982, Salahuddin requested a transfer to Green Haven in order to be closer to his family. In February, 1983, Salahuddin was moved to Green Haven, the transfer being

---

1. Although the basis of this motion is that plaintiff has failed to state a claim upon which relief can be granted, because the movant is presenting to the Court matters outside the pleadings, it is being treated as one for summary judgment. Fed.R.Civ.P. 12(c).

2. There is a discrepancy between the daily wage figure of $1.45 given by plaintiff in his statement to the Green Haven Inmate Grievance Committee (Exhibit I, annexed to Affidavit of Grace A. Brannigan, Esq. sworn to on August 1, 1986, submitted in support of defendants' Motion for Summary Judgment (hereinafter "Defendants' Exhibit I")) and the daily wage figure of $2.19 given by plaintiff in his 3(g) statement. The amounts in question, however, are not pertinent to the decision in this case.

denominated "for program purposes." Upon his arrival at Green Haven, he was demoted to a Wage Grade I position ($.175 per hour or approximately $1.30 per day.). Plaintiff Salahuddin is protesting that demotion.

Section 200 of the New York Correction Law mandates that the Commissioner of the Department of Correctional Services ("Commissioner"; "D.O.C.S.") may, in lieu of labor systems within the institutions, establish

> a system of educational, vocational and industrial training programs, and of incentive allowances for each such program ... For each institution wherein such system is established the commissioner shall prepare, and may at times revise, graded incentive allowance schedules for the inmates within each such program based upon the levels of performance and achievement by an inmate in a program to which he has been assigned.

N.Y.Correct.Law § 200 (McKinney 1987).

Pursuant to Section 200, the Commissioner has promulgated certain incentive wage guidelines ("guidelines"). Exhibit B, annexed to Affidavit of Grace A. Brannigan, Esq. sworn to on August 1, 1986, submitted in support of defendants' Motion for Summary Judgment (hereinafter "Defendants' Exhibit B"). Under these guidelines, prison officials provide guarantees only to certain transferring inmates that they will be allowed to maintain their prior wage grades. Inmates, such as Salahuddin, who are transferred for program purposes are not included in that group.[3] The Commis-

sioner has instructed prison counselors that they should advise each inmate who requests a transfer that he or she may suffer a wage grade demotion as a result of the transfer. (Plaintiff's Exhibit 43.)[4] In the instant case, Salahuddin was not so advised. (Transcript of deposition of Thomas Maye, Correction Counselor, Auburn Correctional Facility, December 6, 1985, at 24.)

At Green Haven, the receiving facility, certain procedures had also been established for dealing with work assignment requests from transferred inmates. In February, 1983, these procedures were governed by Policy and Procedure Directive # 312 ("Directive # 312"), issued December 3, 1982. Plaintiff's Exhibit 41. These procedures were also incorporated into a booklet distributed to all inmates at the facility.[5] (Plaintiff's Memorandum of Law in Support of Cross–Motion for Summary Judgment at 8.) Pursuant to assignment procedures, Directive # 312 states:

> All assignment requests from staff and inmates will be directed to the Program Committee Chairman. As decisions are made on a case by case basis, the decision, along with the accompanying reasons, will become a part of the individual's case record. Appropriate notifications will be made to the concerned parties. It will not be necessary for all assignments to be made at a formal meeting of the committee. However, all Adjustment Committee referrals will be seen.

■ Salahuddin has stated, and defendants have not denied,[6] that the Program

---

**3.** The guidelines state:
An inmate transferred from one facility to another for any reasons other than Distribution of Population will be placed in a grade level determined appropriate by the Program Committee of the receiving facility. Inmates transferred specifically for Distribution of Population reasons will be continued in grade by the receiving facility.
*Id.* at 2.

**4.** On September 11, 1986, plaintiff filed with the Court a compilation of all his exhibits. References herein are made to that compilation.

**5.** As an example of the booklet, plaintiff has offered a copy of a subsequent issue, Inmate

Rules, Programs and Procedures Booklet, Revised April, 1983, as Plaintiff's Exhibit 24. Plaintiff has failed to support his apparent supposition that this later issue did not contain any revisions to the sections dealing with procedures for setting wage grades for newly-transferred inmates. Therefore, the Court is relying on the Directive issued December 3, 1982, which plaintiff has stated was the source of the information in the inmates booklet.

**6.** Defendants in this case have failed to submit a statement pursuant to Civil Rule 3(g) as required by the local rules. Although this could be deemed an admission of the opposing party's statement of material facts, *San Filippo v. U.S.*

Committee never met to determine an appropriate wage grade for him. (Statement of Plaintiff Abdul Y. Salahuddin Pursuant to Civil Rule 3(g) of this Court, at 4.)

## SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has noted, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which were designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1) (citation omitted). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985)).

The Court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 106 S.Ct. at 2510. Once the Court has determined what facts are material, it must then determine whether there is a genuine issue as to a material fact. At this stage "the

judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 2511. The standard for summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the nonmoving party's case." *Anderson,* 106 S.Ct. at 2511. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *Id.* When, as in this case, both sides move for summary judgment, the Court must determine whether there are genuine issues of material fact present. If there are not, the Court may render a judgment. Mindful of the foregoing principles, the Court now turns to the merits of the parties' cross-motions for summary judgment.

## DISCUSSION

The Court is confronted here with summary judgment motions from both sides. Because each party considers the same points, after a general discussion of the standards governing § 1983 claims, the Court will consider the arguments as they are presented by plaintiff's detailed memorandum of law in support of his cross-motion.

*Trust Co. of New York, Inc.,* 737 F.2d 246, 248 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985), and could constitute grounds for denial of the motion, *Gear, Inc. v. L.A. Gear California, Inc.,* 637

F.Supp. 1323, 1333 (S.D.N.Y.1986), the Court will consider affidavits and other exhibits provided by the defendants in lieu of a 3(g) statement. *See Grey v. Gruntal,* Fed.Sec.L.Rep. (CCH) ¶ 93,262 (May 21, 1987).

Plaintiff's original complaint alleges that he was not accorded due process when he was demoted from Wage Grade 4.2 to Wage Grade 1 upon transferring to a new correctional facility.[7] Under the fourteenth amendment, an individual must be accorded due process whenever the state deprives him or her of liberty or property.[8] However, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972).

The Supreme Court has determined that property interests under the fourteenth amendment extend well beyond the ownership of real or personal property or money. *Roth,* at 571–72, 92 S.Ct. at 2705–06. At its broadest, a property interest is an "individual entitlement grounded in state law." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1981). The entitlement is, as often as not, intangible and may relate to "the whole domain of social and economic fact." *Id.* (citing *National Mutual Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)). An individual may also have an interest in the continued receipt of a benefit. *Perry v. Sinder-*

*man,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

A prisoner, although deprived of a great many of the rights he would enjoy as a free citizen, is not stripped of all his constitutional protections. He maintains a certain degree of protected interests even while in legal custody after conviction. *Pugliese v. Nelson,* 617 F.2d 916, 921 (2d Cir.1980). Thus, it is possible for plaintiff to have a property interest in the continuance of the wage grade he has achieved within a particular correctional facility. The threshold question is whether, under the circumstances of this case, plaintiff did have such an interest.

A claimant cannot prove a property interest merely by expressing a preference for it or even by showing a need or "unilateral expectation of it." *Roth,* 408 U.S. at 571–72, 92 S.Ct. at 2706.[9] He or she must, rather, prove a legitimate claim of entitlement to it. *Roth,* at 577, 92 S.Ct. at 2709. For an entitlement to establish a constitutionally valid property right, it need not be spelled out in federal constitutional law. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id. See also Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In *Hew-*

---

**7.** The Court understands this to be the gravamen of plaintiff's *pro se* complaint. The Court is furthered in this understanding by the memorandum of law submitted by Plaintiff's assigned counsel. Plaintiff's Statement of Claim, in his own words, is as follows:

On Feb. 8, 1983 plaintiff was transferred from Auburn to Greenhaven Correctional facility. At Greenhaven, the orientation counselor informed plaintiff for the first time that because the plaintiff was transferred that plaintiff would be stripped of his pay grade and would have to start all over from the bottom of the incentive pay wage, that transfer terminates any incentive grade pay of prior facility. Plaintiff grieved this under docket no. #6796/83. Supt. C. Scully denied grievance and all retroactive pay despite Plaintiff outstanding achievements in obtaining this grade according to work efforts and that counselor at prior facility failure to inform Plaintiff that such loss would occur upon transfer. Counselor at Auburn forwarded transfer papers to Albany and transfer from Albany Commissioner's office signed transfer order "Transfer

for program purposes." Plaintiff counselor at Greenhaven informed Plaintiff that Plaintiff must have had a poor work record which was false and was not ever told to Plaintiff, by Auburn counselor. And now I am working at the bottom pay scale again.

**8.** "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of due process standards relative to the deprivation of property parallels the analysis of those standards relative to the deprivation of liberty. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).

**9.** It is clear from some of plaintiff's exhibits that there was a belief among certain inmates that they would continue in their wage grade after they requested a transfer, *e.g.,* findings of the Inmate Grievance Program, Plaintiff's Exhibits 43, 47, and 51. However, the Court has been unable to find any valid basis, in state law or any other source, for this belief.

*itt*, the Court held that "the Pennsylvania statutory framework governing the administration of state prisons gave rise to a liberty interest in respondent." *Id.* at 466, 103 S.Ct. at 868. Such interests may be manifested by institutional regulations (*Wolff v. McDonnell*, 418 U.S. 539, 544, 94 S.Ct. 2963, 2969, 41 L.Ed.2d 935 (1974)), by departmental directives (*Kozlowski v. Coughlin*, 539 F.Supp. 852, 856 (S.D.N.Y. 1982)), or by statements of official policy (*Tracy v. Salamack*, 440 F.Supp. 930, 934–35 (S.D.N.Y.1977), *aff'd and modified on other grounds*, 572 F.2d 393 (2d Cir.1978)). Even common law decisions or widespread understandings, as long as they stem from an independent source such as state law, can serve to establish a property right. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Leis v. Flynt*, 439 U.S. 438, 441–43, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979).

In the case at hand, a summary judgment motion by defendants has already been denied on the grounds that plaintiff had not yet had an adequate opportunity to prove the common law or general understanding concerning his entitlement to a continuation of his previous wage grade. Order of February 26, 1985. Subsequent to the denial of summary judgment, plaintiff has argued resourcefully that his right to the continuance is grounded in state law, in the D.O.C.S. regulations and guidelines, and in D.O.C.S. practices which have given rise to a "general understanding" that prisoners would be allowed to transfer with their achieved wage grades. This Court finds, however, that as a matter of law plaintiff has not proved the threshold point, that he has an entitlement to, or a legitimate expectation of, the continuance of his wage grade from one prison to the next.

### I

■ It is not disputed that an inmate does not have a federal constitutional right to a specific wage grade while incarcerated in a correctional facility. *Newman v. Alabama*, 559 F.2d 283, 292 (5th Cir.1977); *McCrary v. Coughlin*, No. 84 Civ. 2747, slip op. January 3, 1985 (S.D.N.Y.) [Available on WESTLAW, 1985 WL 33]. Plaintiff argues, however, that Section 200 of the New York Correction Law creates a protectible right because the statute mandates that the Commissioner "shall prepare ... graded incentive allowance schedules ... based upon the [inmate's] levels of performance and achievement." N.Y.Correct.Law, (McKinney, 1987). Plaintiff cites *Raso v. Moran*, 551 F.Supp. 294 (D.R.I. 1982) to support his point that the verb "shall" relieves the Commissioner of any discretion as to basing incentive allowances purely on performance and achievement. *Raso* concerned an inmate's right to participate in a blood donor program which would have entitled him to a ten-day sentence reduction for each pint of blood given. The Court ruled that the wording of Rhode Island General Law § 42–56–25 gave the inmate a liberty interest in his right to participate in the program.

The Rhode Island statute was worded as a flat statement governing all inmates: "Any prisoner sentenced to imprisonment for thirty (30) days or more in the adult correctional institutions ... shall be entitled to have deducted from the term or terms of sentence of such prisoner ten (10) days for each pint of his or her blood donated by him or her...." *Raso*, 551 F.Supp. at 298. Section 200, on the contrary, is framed on a facility by facility basis. "For each institution wherein [an educational, vocational or industrial training] system is established the commissioner shall prepare ... graded incentive allowance schedules for the inmates within each such program based upon the levels of performance and achievement by an inmate in a program to which he has been assigned." The statute may give a *Raso*-type entitlement to an inmate within a given facility. The Court does not here address that question. Nowhere in the statute, however, is it mandated that an inmate can continue his wage grade from one facility to another. Nor are the incentive schedules in any one facility necessarily parallel to those in another. Section 200 does not create in an inmate a protected entitlement to a particular wage grade that can survive a transfer within the prison system.

Plaintiff next argues that the guidelines promulgated for the operation of the incentive wage allowance system under Section 200 give him an entitlement because the guidelines in effect in February, 1983, state that "[a] falling off of efficiency and production will be considered cause for a reduction in grade or demotion to a lower grade." Plaintiff's Exhibit 16. This, it is posited, creates a reasonable expectation in plaintiff that such a falling off will be the *only* reason for a demotion. Plaintiff cites *Kozlowski v. Coughlin*, 539 F.Supp. 852 (S.D.N.Y.1982), for the point that such guidelines can create in an inmate an interest protectible under the fourteenth amendment.

*Kozlowski* is apposite, but not to the argument put forth by plaintiff. The issue in *Kozlowski* was whether D.O.C.S. Directive # 4403, which described the circumstances under which the Superintendent could revoke or deny visitation privileges, was constitutional. The Court stated that "to be a constitutionally protected interest, ... the benefit must be presently enjoyed by the individual claiming entitlement, or enjoyable upon the happening of specified conditions." *Kozlowski*, 539 F.Supp. at 855 (citing *Pugliese v. Nelson*, 617 F.2d 916, 922 (2d Cir.1980)). In the case at bar, it is self-evident from the guidelines that no inmate who transferred for program purposes in February, 1983 was "presently" enjoying the benefit of maintaining his prior wage grade at the new facility. This was a benefit he simply did not have.

*Kozlowski* buttresses its findings by referring not only to clear statements in the D.O.C.S. guidelines concerning visitation rights but also to the construction of those guidelines by the state court.[10] In the instant case, the pertinent D.O.C.S. guidelines have also been upheld in state court. *Kibbe v. Scully*, 97 A.D.2d 795, 468 N.Y.S. 2d 538 (2d Dept.1983). Although inmate Kibbe's complaint was brought under Article 78 of the New York Civil Practice Law, the gravamen was virtually identical to Sa-lahuddin's Section 1983 complaint: that is, an objection to loss of prior wage grade as a result of transfer from Auburn to Green Haven. *Kibbe* held that "[h]aving been transferred from Auburn Correctional Facility to Green Haven Correctional Facility for reasons other than distribution of population, petitioner is not entitled to the same rate of pay under Department of Correctional Services payroll guidelines." *Id.* at 795, 468 N.Y.S.2d 538.

Plaintiff next suggests that D.O.C.S. policies and practices create an entitlement to a transferrable wage grade. Nowhere, however, does he show that it was either policy or practice that inmates transferred for program purposes actually did maintain their prior wage grade at the new facility. Moreover, plaintiff has not shown that when prisoners objected to their demotions, through the inmate grievance programs, that the Commissioner ever allowed the wage grade continuation. On the contrary, Commissioner Coughlin has stated, and plaintiff has not denied, that he *never* granted a carry-over of a wage grade. Transcript of deposition of Thomas A. Coughlin, March 5, 1986, at 54.

Finally, plaintiff attempts to show that by a combination of procedural and substantive protections, the D.O.C.S. has created a constitutionally protected interest in a transferrable wage grade in inmates who transfer for program purposes. However, the case cited to support this argument states that such protections do not, in themselves, create such an interest, but only "may contribute to [an] inference arising from penal practice." *Garcia v. Batista*, 642 F.2d 11, 17 (1st Cir.1981). Because, as noted above, Commissioner Coughlin has stated in his deposition that he has never granted an automatic continuation of wage grade to an inmate transferring for program purposes, penal practice in New York could give rise only to an inference that wage grades were not transferrable

10. "The New York Court of Appeals has recognized as a matter of state law that those within the custody of the state have a fundamental right to the maintenance of relationships with family and friends." *Kozlowski*, 539 F.Supp. at 856.

during such transfers.[11] Thus, there is no property interest growing out of D.O.C.S. procedures.

In any summary judgment proceeding, the Court is constrained to view the inferences drawn from the underlying facts in a light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) (citing *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). In the instant case, whether the Court is considering the wording and effect of state statutes, of the D.O.C.S. guidelines, or of the consistent decisions of the Commissioner of Corrections when he was asked to permit the transfer of a prior wage grade, it is not possible to view the evidence other than as supporting the position of the defendants. Plaintiff has not been able to prove that he had a legitimate expectation of transferring his wage grade to a new facility. Barring that expectation, he has no legally cognizable property right in that wage grade which can survive transfer to a different facility. Thus, plaintiff has not made the threshold showing requisite for a due process claim under 42 U.S.C. § 1983.

## II

The Court now considers plaintiff's equal protection claim. Plaintiff finds unconstitutional distinctions in two aspects of his treatment by the D.O.C.S. First, a distinction has been made between non-transferring inmates who maintain their wage grade as long as their achievement and performance are up to standard and inmates transferring for "program purposes" who receive a new wage grade at the receiving facility. Second, there is distinction made between inmates who transfer for program purposes and those who are transferred for purposes of Distribution of Population ("D.O.P."). The latter are guaranteed a continuation of their prior wage grade.[12] Plaintiff argues that in

both instances the unequal treatment bears no rational relationship to any legitimate state purpose and thus violates the equal protection clause of the fourteenth amendment.

Equal protection rights under the Constitution can survive imprisonment. *Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (cited in *Smith v. Coughlin,* 748 F.2d 783 (2d Cir.1984). Plaintiff is correct in recognizing that because he is not making his claim as a member of a suspect class, *see United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938), and because the right in question cannot be considered a fundamental right, *see San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 30–34, 93 S.Ct. 1278, 1294–97, 36 L.Ed.2d 16 (1973), the Court is not required to apply standards of strict scrutiny to the state action at issue. The standard by which the questions are to be resolved is merely whether there is a rational relationship between the action taken by the state and a legitimate state objective. *Hooper v. Bernalillo, County Assessor,* 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985). *See also Jones v. North Carolina Prisoners' Union, Inc.,* 433 U.S. 119, 134, 97 S.Ct. 2532, 2542, 53 L.Ed.2d 629 (1977) (declaring that prison administrators "need only demonstrate a rational basis for their distinctions" when making classifications.) The Court finds that this standard is met in both instances of alleged unconstitutional discrimination.

Plaintiff makes much of the argument that an inmate should not be punished by a wage grade demotion for going from a maximum to a medium security prison. D.O.C.S. does not see such a transfer as punishment. On the contrary, the inmate is rewarded by the move to a less restrictive environment which is not only closer to his home but also offers a pro-

---

**11.** Thomas A. Coughlin has been D.O.C.S. Commissioner since 1979.

**12.** Subsequent to February, 1983, D.O.C.S. policy was changed. D.O.P. transferees are no long-

er guaranteed a continuation of their prior wage grade. See D.O.C.S. Directive of March 4, 1985. Plaintiff's Exhibit 9.

gram which the inmate himself has requested. D.O.C.S. Internal Memo, February 9, 1984 (Plaintiff's Exhibit 29). The change in wage grade is not seen as punishment but as an element necessary to the organization of the entire incentive allowance program. This organizational imperative was clarified in a statement made in conjunction with the 1978 initiation of the plan to discontinue the previous practice of maintaining the wage grades of all inmates transferred for reasons other than discipline.

The discontinuance of the current practice is deemed appropriate for two reasons:

1. Morale—Currently inmates being transferred are placed in assignments with allowances far in excess of fellow inmates who were not transferred. Clerks, porters, dishwashers, etc. are being paid more than electricians, plumbers, cooks, etc. based solely on prior facility allowance levels.

2. Funding— ... [D]iscontinuance of this practice will reduce the amount of funding required as inmates not transferred in grade will be placed in work assignments at incentive allowances compatable to their abilities. In many cases this will probably be an allowance level lower than that held at their prior facility thus delaying their advancement through the grade scales.

Letter from D.O.C.S. Deputy Commissioner to the Acting Director of the Budget (New York State), July 11, 1978. Plaintiff's Exhibit 26.[13]

The Commissioner expanded upon D.O.C.S. policy in the decision he rendered when Salahuddin appeared before the Green Haven Inmate Grievance Committee:

It is mandatory that the Program Committee have the authority to establish an inmate's pay rate upon program assignment for several reasons. An inmate's pay rate should be commensurate with his program assignment. It is not appropriate for an inmate who attained a Grade IV, Step II pay rate in a responsible full time position at an upstate maximum security facility to be automatically maintained at that rate upon transfer to a less secure facility, which is closer to his/her family where he/she is reassigned as a porter and, in reality, only works two hours per day. It must be more than an inmate's time in the system or program that determines whether or not top pay is warranted. Otherwise, the incentive for an inmate to work towards self-improvement is diminished.

Plaintiff's Exhibit 42.

These statements of D.O.C.S. policy lead this Court to believe that the state does have a legitimate interest in maintaining morale, in keeping administrative costs within budgetary boundaries and, in fact, in making the incentive allowance schedule work to promote the objectives of the work/training program established under Section 200. The procedures selected by the state to promote these objectives have a rational relationship to those objectives.

Plaintiff's second equal protection argument is that D.O.C.S. may not constitutionally distinguish between inmates transferred for program purposes and those transferred for the purpose of Distribution of Population. Again, the words of the Department clarify its position and satisfy the Court that there is a legitimate state objective at stake and that there is a rational relationship between the Department's policy and that objective:

Please be advised that distribution of population refers exclusively to situations where groups of inmates are moved solely for the purposes of reducing overcrowding, when closing units (cells) for construction or similar purposes, equalizing population levels among facilities or to facilitate the opening of a new facility where transfer to such facility does not also provide some programmatic advantages or reduction in security level to inmates.

ties. Plaintiff's Exhibit 15.

---

**13.** Figures for the anticipated savings were outlined in an earlier letter between the same par-

**1058**

Memo From Assistant Commissioner D.O. C.S. to Superintendents, Program Deputy Superintendents, Senior Counselors, Head Clerks, September 30, 1982. Plaintiff's Exhibit 4.

There are legitimate reasons for making of a D.O.P. transferee an exception to the general rule: Such a transfer is not done at the inmate's request and it does not provide him any of the advantages which, as noted above, accrue to an inmate transferred for program purposes or to be nearer his family. *See Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). Thus, because there is a legitimate basis for the D.O.C.S. policy of discriminating between the two groups, plaintiff's second instance of alleged denial of equal protection must also fail.

## CONCLUSION

Under the panoply of case law refining the fourteenth amendment, a prison inmate retains his constitutional protections against unlawful deprivation of his liberty and property rights. But these rights may be subject to restrictions imposed, of necessity, by the fact of his incarceration. What the law requires in this circumstance is a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed. 2d 935 (1974).

In presenting his case, plaintiff Salahuddin has not demonstrated that he is entitled to any degree of due process as to his understandable desire to retain his former wage grade, nor that he has been denied equal protection of the law in the face of D.O.C.S. regulations which are rationally related to legitimate state goals. When a non-moving party cannot muster sufficient evidence to make out his claims, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court therefore denies plaintiff's motion for summary judgment and grants the summary judgment motion of defendants.

SO ORDERED.